# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRE BENJAMIN, et al., | CASE NO. 1:08cv1025 AWI DLB |
| Plaintiffs, | ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER<br>(Document 34) |
| vs. | |
| GREGORY BIXBY, et al., | |
| Defendants. | |

On June 2, 2009, Defendants Gregory Bixby and Ben Bixby ("Defendants") filed the instant motion to transfer venue. The matter was heard on July 10, 2009, before the Honorable Dennis L. Beck, United States Magistrate Judge. Staci Riordan appeared telephonically on behalf of Plaintiffs Andre Benjamin, The Benjamin Company, LLC, High Schoolers, LLC, and Andre 3000, Inc. Defendant Gregory Bixby appeared pro se. Defendant Ben Bixby (alternatively Benjamin Bixby) did not appear.

**BACKGROUND**

Plaintiffs Andre Benjamin (aka Andre 3000) ("Benjamin"), The Benjamin Company, LLC, High Schoolers, LLC, and Andre 3000, Inc. (collectively "Plaintiffs") filed this action on July 17, 2008, for cybersquatting, trademark infringement, false designation of origin, false advertising, commercial misappropriation of likeness, infringement of the common law right of publicity, unfair

1

competition, and unjust enrichment against Defendants Greg Bixby, Ben Bixby and Lock Jaw Racing, LLC. Plaintiffs filed a First Amended Complaint on July 30, 2008.

Plaintiff Benjamin, professionally known as Andre 3000, is a recording artist. He is a member of the two-man recording group "OutKast." Benjamin, known for his "unique style of fashion," owns The Benjamin Company. FAC, at 3. Benjamin and his OutKast partner, Antwan Patton, professionally known as "Big Boi," are members of High Schoolers, LLC.

In the First Amended Complaint ("FAC"), Plaintiffs allege that in April 2001, Plaintiff High Schoolers filed an application to register the OUTKAST mark. High Schoolers is now the owner of the U.S. trademark registration for the OUTKAST mark. Plaintiffs further allege that on or about August 2004 and September 2004, Andre 3000, Inc., filed three applications to register the ANDRE 3000 mark. Andre 3000 is Plaintiff Benjamin's "stage name," under which he "has become one of the most well-known recording artists and music composers in the world." FAC, at 6. In December 2007, Plaintiff The Benjamin Company filed ten applications to register the BENJAMIN BIXBY mark for various items of apparel. Thereafter, in or about February 2008, Plaintiffs contend that The Benjamin Company formally announced the launch of a men's clothing line called "Benjamin Bixby clothing line," which would be sold in high-end department stores and specialty fashion boutiques beginning in Fall 2008. Benjamin is the primary designer for the Benjamin Bixby clothing line, which is marketed by The Benjamin Company under the mark BENJAMIN BIXBY. FAC, at 4-5. The Benjamin Company owns the domain name "Benjamin-Bixby.com" (and others) for its website to promote, advertise and sell its Benjamin Bixby line of clothing.

Plaintiffs further allege that Defendants have operated an internet website that utilizes registered domain names that are confusingly similar and virtually identical to the BENJAMIN BIXBY mark. Shortly after the mark was first used in connection with the publicized announcement of the Benjamin Bixby clothing line, Defendants allegedly registered the domain names "Benjaminbixby.com," "Benjaminbixbyclothing.net" and "Benjaminbixbyclothing.com" with GoDaddy.com, Inc. Plaintiffs allege that Defendants have been using or are currently using these domain names to "lure and divert Internet users searching for the famous BENJAMIN BIXBY website to Defendants' website, on which Defendants offer for sale various clothing and apparel

2

items for the purpose of misleading consumers as to the affiliation or source of the clothing offered for sale." FAC, at 8-9.

According to the First Amended Complaint, on or about May 12, 2008, Plaintiffs' counsel contacted Defendants regarding the use of the domain name "Benjaminbixby.com." Plaintiffs' counsel reportedly notified Defendants of their intention to pursue legal action in the event that Defendants used the domain name in any way that suggested an affiliation with Plaintiffs or otherwise attempted to trade on Plaintiffs' goodwill. FAC, at 9. Plaintiffs allege that they offered to purchase the domain name from Defendants for $5000.00.

Plaintiffs also allege that Defendant Greg Bixby later contacted Plaintiffs' counsel and stated that Defendants had no intention to use the domain name for any purpose other than the promotion of the motocross photography business of Greg Bixby's son, Defendant Ben Bixby (alternatively Benjamin Bixby). It is alleged that Greg Bixby further indicted that Defendants would be willing to sell the domain name to Plaintiffs, but stated $5000.00 would not be enough. Greg Bixby did not specify an amount that Defendants would accept. Plaintiffs contend that the statements by Greg Bixby were untrue. Plaintiffs later learned that before the contact by Greg Bixby, Defendants had purchased anonymously the domain names "Benjaminbixbyclothing.com" and Benjaminbixbyclothing.net." FAC, at 9.

On or about May 14, 2008, Plaintiffs allege that their counsel again contacted Defendants and reiterated the $5000.00 offer. Plaintiffs' counsel informed Defendants that they would be monitoring Defendants' website to ensure that the domain name was not used in any way to imply a connection to the BENJAMIN BIXBY mark or to sell clothing. According to Plaintiffs, Defendants allegedly made assurances that they only were going to use the domain name to showcase the motocross photography of Defendant Ben Bixby. However, Plaintiffs allege that on June 12, 2008, they discovered that Defendants had revised the website to indicate that Defendants would soon be selling clothing. The website included a picture of a man's upper body wearing a suit jacket and tie with the caption "CHECK BACK SOON! To see The New Duds Available At BENJAMINBIXBY.COM."

On that same date, Plaintiffs also allegedly discovered that Defendants were using the terms

3

"Andre Benjamin," "Andre 3000", and "Outkast" as metatags to link internet users to their website. Plaintiffs further learned that Defendants had acquired the domain names "Benjaminbixbyclothing.com" and "Benjaminbixbyclothing.net." Plaintiffs' counsel purportedly warned Defendants to cease and desist from their illegal conduct, including the use of the metatags and the benjaminbixby.com website, by Friday, June 13, 2008, or Plaintiffs would file suit.

As noted, Plaintiffs initially filed suit on July 16, 2008. They filed an amended complaint on July 30, 2008.

In August 2008, Plaintiffs requested the defaults of Defendants Gregory Bixby and Ben Bixby. The Clerk of the Court entered their defaults on September 3, 2008.

On September 19, 2008, Plaintiffs filed a notice of voluntary dismissal without prejudice as to Defendant Lock Jaw Racing, LLC.

On November 25, 2008, the parties filed a stipulation to vacate the entries of default against Defendants Gregory Bixby and Benjamin Bixby. According to the stipulation, the parties agreed to vacate the defaults after Defendants contested "whether service of the summons and complaint on which the entries of default were based were proper under applicable law and rules." (Doc. 21). The Court granted the stipulation and vacated the defaults on February 2, 2009.

On February 28, 2009, Plaintiffs were granted a substitution of attorney. (Doc. 28).

On March 19, 2009, Defendants Gregory Bixby and Benjamin Bixby filed an answer to the FAC. (Doc. 31).

On June 2, 2009, Defendants filed the instant motion to transfer venue to the Western District of Michigan under 28 U.S.C. § 1404(a). At a scheduling conference, the Court set the transfer motion for hearing. On June 25, 2009, Plaintiffs filed their opposition to the motion, along with the declarations of Andre Benjamin, Eufaula Garrett, Mary Grieco and Staci Riordan. Defendants did not file a reply. At the hearing, Defendants submitted the declarations of Greg Banks and Benjamin Bixby.

## **DISCUSSION**

A. <u>Legal Standard</u>

Section 1404(a) states: "For the convenience of parties and witnesses, in the interest of

justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "This provision gives a district court broad discretion to transfer a case to another district where venue is also proper." Amini Innovation Corp. v. JS Imports, Inc., 497 F.Supp.2d 1093, 1108 (C.D.Cal. 2007). Indeed, "the purpose of the section is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense. " Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (quoting Continental Grain Co. v. Barge F.B.L.-585, 364 U.S. 19, 26-27 (1960)).

B.   Venue

Defendants contend that venue is proper in the Western District of Michigan based on their residence. Defendants rely on 28 U.S.C. § 1391(a) and argue that the instant action has no legal, factual or logical relationship to the Eastern District of California. Section 1391(a) provides:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). As to residence (section 1391(a)(1)), Defendants assert that they have been residents of Michigan for more than 20 years. To support this assertion, Defendants submitted copies of their Michigan drivers licenses, which list their addresses in Williamston, Michigan. Defendants also assert that Defendant Greg Bixby does not reside on property owned in the "Tahoe" area. As to the events or omissions giving rise to the claims (section 1391(a)(2)), Defendants argue that Plaintiffs have not offered any evidence or asserted that any of the alleged events or omissions occurred in this district or that a substantial part of the property that is the subject of the action is situated in this district.

Plaintiffs counter that section 1391(a) is inapplicable because this action is not based on diversity of citizenship, but on federal questions over which this Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331. Plaintiffs argue that section 1391(b) is the appropriate venue statute. The Court agrees.

5

Section 1391(b) requires that a civil action, other than one based on diversity jurisdiction, be brought only in "(1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(b).

    a.  Residence of Defendants

Pursuant to section 1391(b), venue is appropriate in a judicial district where any defendant resides if all defendants reside in the same state. In this action, there are two defendants, Gregory Bixby and Ben Bixby, who contend that they both reside at the same address in Williamston, Michigan.

Plaintiffs argue that Defendants' contention is incorrect. Plaintiffs state that the Defendants do not reside in the same location. Plaintiffs point to Ben Bixby's personal website, declaring that the website demonstrates Ben Bixby has been residing in Lansing, Michigan, and plans to move to Savannah, Georgia to continue his college education. Declaration of Staci Riordan ¶ 2 and Exhibit A. At best, Plaintiffs' "evidence" indicates that Defendant Ben Bixby was attending Lansing Community College in Lansing, Michigan and planned to "head[] off for Savannah, Georgia, to check out the Savannah College of Art and Design." Exhibit A to Riordan Decl. Plaintiffs' purported evidence fails to establish that Ben Bixby "resides" in Lansing, Michigan or that he has moved to Savannah, Georgia.[1] Moreover, even if Ben Bixby resides in Lansing, Michigan, the statute does not require that all defendants reside in the same location or city, only the same state. Further, the Declaration of Benjamin Bixby submitted at the hearing indicates he resides at an address in Williamston, Michigan, and attends Lansing Community College, located approximately 10 miles from his home in Williamston. Declaration of Benjamin Paul Bixby ¶1. Therefore, the Court concludes that both defendants are residents of Michigan and venue would be appropriate in a

---

[1] Plaintiffs' counsel, Staci Riordan, declares under penalty of perjury that "According to Benjamin Bixby's personal website, he has been residing in Lansing Michigan, and has imminent plans to move to Savannah, Georgia to continue his college education." The declaration of counsel misrepresents the evidence presented to this Court. As discussed more fully in this Order, the Court has cautioned Plaintiffs' counsel about the filing of inaccurate declarations.

district court in that state. 28 U.S.C. § 1391(b)(1). Specifically, as both defendants reside in Williamston, Michigan, which is located in Ingham County, venue would be appropriate in the Southern Division of the Western District of Michigan.

          b.      Judicial District in Which a Substantial Part of the Events or Omissions Giving Rise to the Claim Occurred

Section 1391(b)(2) allows for venue in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. "Section 1391(b)(2) does not require that a majority of the events have occurred in the district where suit is filed, nor does it require that the events in that district predominate." Rodriguez v. California Highway Patrol, 89 F.Supp.2d 1131, 1136 (N.D.Cal. 2000).

Plaintiffs argue that a substantial part of the events giving rise to their claims arose in the Eastern District of California. As background, Plaintiffs assert that Defendant Gregory Bixby is the equitable owner of property located at 1770 Pardoes Road, Pioneer, California ("Pioneer Property") in the Eastern District.[2] The Pioneer Property is held in Gregory Bixby's parents' name, but he is responsible for its maintenance, the utility bills are in his name and he regularly pays for its upkeep and the property taxes. Riordan Decl. ¶ 4. His parents, the title holders, are residents of Texas, where they live in a supervised facility. Id.

Plaintiffs further indicate that their preliminary investigation has shown the following:

- After researching the celebrity status of Andre Benjamin from the Pioneer Property, Defendants contacted Benjamin's California-based agent's assistant, Jonathan Schwartz, offering to sell www.benjaminbixby.com from the Pioneer Property. (Declaration of Eufaula Garrett ¶ 4; Exhibit D [E-Mail from Greg Bixby to Jonathan Schwartz dated 3/20/08 listing a cell phone number and phone number for his "Winter home (Cabin) near Tahoe" as contact information] )

- On March 20, 2008, Defendants instructed Schwartz to contact them at the Pioneer Property if Andre Benjamin was "interested in owning the domain." Id.

- On March 20, 2008, Defendants purchased www.benjaminbixbyclothing.com and www.benjaminbixbyclothing.net from the Pioneer Property. Id. at ¶ 5 and Exhibit E [Search Results from GoDaddy.com, Inc., showing registration of "BENJAMINBXIBYCLOTHING.NET" and "BENJAMINBIXBYCLOTHING.COM" on March 20, 2008, by Domains by Proxy,

---

[2]Pioneer, California is in Amador County. Pursuant to Local Rule 3-120(d), all civil actions cognizable in the Eastern District arising in Amador County must be commenced in Sacramento, California. Therefore, if venue is appropriate in the Eastern District, then the matter properly belongs in the Sacramento division.

7

Inc., located in Scottsdale, Arizona].

- Defendant Greg Bixby was at the Pioneer Property during negotiations to sell the three websites. Id. at ¶ 4; Declaration of Mary Grieco (corporate and IP counsel for Plaintiffs The Benjamin Company, Highs Schoolers and Andre 3000 Inc.) ¶¶ 3-4, 9.

- Defendants advertised and promoted their "Benjamin Bixby Clothing," using Plaintiffs' trademarks from the Pioneer Property. Grieco Decl. ¶¶ 7-8; Exhibit 2 [Screen shot from "benjaminbixby.com"] and Exhibit 3 [Copy of metatags from "benjaminbixby.com" in June 2008].

- Defendants revised their website from the Pioneer Property after receiving Plaintiffs' June 12, 2008, email, directing them to cease and desist. Grieco Decl. ¶ 9; Exhibit 4 [June 12, 2008 email from Mary Grieco to "gregbixby@hotmailcom"].

- All three websites are accessible in the Eastern District. Grieco Decl. ¶ 11, Riordan Decl. ¶ 9.

The information provided by Plaintiffs indicates that Defendant Gregory Bixby likely was in Pioneer, California on March 20, 2008, engaged in some e-mail communications with Plaintiffs and provided contact information to Plaintiffs' counsel at that address. However, Plaintiffs' exhibits and declarations do not establish that "BENJAMINBXIBYCLOTHING.NET" and "BENJAMINBIXBYCLOTHING.COM" were registered from the Pioneer Property. Exhibit E to the declaration of Eufaula Garrett shows only that the registrations were completed by "Domains by Proxy, Inc.," which lists an address in Scottsdale, Arizona. Plaintiffs also fail to establish that Defendants revised their website from the Pioneer Property or that they advertised and promoted their clothing using Plaintiffs' trademarks from the Pioneer Property. The submitted evidence consists only of a screen shot and information regarding metatags, but does not show where any alleged advertising or revisions to the website occurred.

At the hearing, Defendant Gregory Bixby represented that all programming, all registration, and all renewals have been done by Benjamin Bixby in Michigan. Gregory Bixby further indicated that he did not know website development. Further, Benjamin Bixby's declaration states that he has "personally performed all of the programming and registration activities related to [his] personal website benjaminbixby.com" and "[a]ll of these programming activities were performed by [him] while at [his] residence in Williamston, Michigan." Benjamin Bixby Decl. ¶4.

Based on the representations at the hearing and the supporting declaration of Benjamin Bixby, the Court concludes that a substantial part of the events or omissions giving rise to the claim

did not occur in the Eastern District of California.

     c.  Judicial District in Which any Defendant May Be Found

  Plaintiffs attempt to argue that venue is appropriate in the Eastern District because Defendant Gregory Bixby is regularly found at the Pioneer Property. Venue is proper in a district in "which any defendant may be found, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(b)(3) (emphasis added). This provision only applies if there is no other appropriate district where the action may be brought. In this case, venue is appropriate in Michigan and thus Plaintiffs cannot rely on this provision.

  Plaintiffs' remaining arguments are unpersuasive. First, Plaintiffs assert that Defendant Gregory Bixby is active the governance of Amador County and is on the board of a local club, Sierra Static. Riordan Decl. ¶¶ 7-8; Exhibit C and Exhibit D. To support their assertion, Plaintiffs provide minutes from a meeting of the Amador County Board of Supervisors dated December 6, 2005. Exhibit C to Riordan Decl. According to the minutes, "Greg Bixby" spoke as a member of the public on two matters before the Board of Supervisors. Contrary to Plaintiffs' suggestion, a single appearance by Gregory Bixby at a meeting of the Amador County Board of Supervisors in 2005 does not indicate that he is "active" in Amador County governance.

  As to membership in a local club, Sierra Static, Plaintiffs provide minutes from two meetings of the club dated August 29, 2008, and November 25, 2008. In the November 2008 minutes, Greg Bixby is nominated for a Sierra Static Board position. Exhibit D to Riordan Decl. At the hearing, Gregory Bixby explained that this is a HAM radio club, which he joined for $8.00, that provides him access to an "autopatch" for emergency contacts because there is no cell phone access at the Pioneer Property cabin located in the high country.

  Second, Plaintiffs contend that Defendant Gregory Bixby is found in the Eastern District because he was served with the summons and complaint at the Pioneer Property. Plaintiffs' counsel declares under penalty of perjury that Defendant Gregory Bixby was served at the Pioneer Property. Riordan Decl. ¶ 9. Attached to counsel's declaration is a Proof of Personal Service of Greg Bixby showing service in Pioneer, California on August 1, 2008. Exhibit E to Riordan Decl. At the hearing, however, Defendant Gregory Bixby reported to the Court that he was not served personally

at the Pioneer Property contrary to the proof of service. Mr. Bixby explained that the process server gave the documents to a neighbor, Greg Banks. Mr. Bixby also provided the Court with the Declaration of Greg Banks. According to Mr. Banks' declaration, on August 1, 2008, he was visiting his parents' cabin located on Pardoes Road in Pioneer, California. Banks Decl. ¶2. That evening, he went out for a walk. Id. ¶3. While walking along the drive leading to the Bixby's property, he was approached by a car driven by a man. Id. ¶3-4. The car stopped and the driver asked "are you Greg?," to which Mr. Banks replied "Yes." Id. ¶5. The man handed Mr. Banks a stack of papers and left. Id. ¶¶ 6-7. Mr. Banks looked at the papers, which appeared to be "some type of legal documents" that were not intended for him. Id. ¶8. Mr. Banks declares that "the man in the car made a mistake and assumed I was Greg Bixby and served legal papers on the wrong person." Id. ¶8.

Mr. Bixby also represented to the Court that Plaintiffs' previous counsel knew the facts surrounding service and agreed to set aside the default because he was never served. The Court's docket reveals that Plaintiffs' previous counsel and defendants stipulated to vacate defendants' defaults after defendants contested "whether service of the summons and complaint on which the entries of default were based were proper under applicable law and rules." (Doc. 21). At the hearing, Plaintiffs were unable to refute Defendant's claims and it appears that Mr. Bixby was not personally served at the Pioneer Property.

Most troubling to the Court is the suggestion that prior counsel was aware of the service issue, but a contrary declaration appears to have been filed by Plaintiffs' current counsel. At the hearing, the Court expressly told Ms. Riordan that if her declaration was in error regarding service of Gregory Bixby, then she should correct it. The Court also directed Ms. Riordan to ensure that others in her law firm would not make similar, erroneous declarations to this or any other court. Since the hearing, Plaintiffs' counsel has not filed a corrected or supplemental declaration regarding service of Gregory Bixby. Disregard of this Court's direction is unacceptable. The Court recognizes that the declarations of Mr. Banks and Benjamin Bixby were submitted at the hearing, but were not filed on the Court's docket until July 14, 2009. However, Plaintiffs' counsel has had sufficient time since the July 10, 2009 hearing to determine the accuracy of her declaration. Accordingly, if Ms. Riordan's

original declaration, signed under penalty of perjury, is incorrect, she is directed to file a supplemental, corrected declaration within five (5) court days of this Order. Otherwise the Court will have no choice but to schedule an Order to Show Cause to determine whether the statements made under penalty of perjury were made falsely or without sufficient inquiry.

C. Plaintiffs' Choice of Forum

As noted, under 28 U.S.C. § 1404(a), the district court has discretion to transfer a case to another appropriate venue. Jones v. GNC Franchising, Inc., 211 F.3d 495 (9th Cir. 2000). Section 1404(a) identifies three basic factors for district courts to consider in determining whether a case should be transferred: (1) convenience of the parties; (2) convenience of the witnesses; and (3) the interests of justice. 28 U.S.C. § 1404(a). The Ninth Circuit has identified additional factors a court may consider:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

Jones, 211 F.3d at 498-499.

Plaintiffs contend that their choice of venue in the Eastern District should not be disturbed. Generally, a plaintiff's choice of forum is given significant deference, and will only be overridden upon a strong showing of inconvenience to the defendant. Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986). The burden is on the defendant to show that the convenience of parties and witnesses and the interests of justice require transfer to another district. Mayberry v. International Business Machines Corp., 2009 WL 1814436, *2 (N.D.Cal. June 25, 2009) (citing Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 279 (9th Cir. 1979)). Plaintiffs assert that the balance of Jones factors favors adjudicating this matter in California, not Michigan. Plaintiffs focus on the convenience of their witnesses, convenience of the parties and location of the evidence.

In this instance, the Court has found that venue is not appropriate in the Eastern District of California and Plaintiffs' choice of venue is not afforded deference. Even if Plaintiffs' choice is

accorded deference, the convenience of the parties, convenience of the witnesses, and location of evidence favor transfer to the Western District of Michigan.

### 1. Convenience of Witnesses

Plaintiffs argue that convenience of the witnesses is one of the most important factors in determining whether to grant a motion to transfer, citing Johnson v. Proline Concrete Tools, Inc., 2008 WL 3154731, *3 (E.D.Cal. Aug. 4, 2008). Plaintiffs identify five witnesses located in the Los Angeles area, including Robert Kahan, Darrell Miller, Jeffrey Joyner and Jonathan Swartz, who will testify to the creation, development and operations of the Benjamin Company's Benjamin Bixby clothing line. For instance, testimony will include selection and registration of the BENJAMIN BIXBY mark, registration and ownership of the OUTKAST and ANDRE 3000 family of marks, efforts to purchase www.benjaminbixby.com from Greg and Ben Bixby and discovery and investigation of Greg and Ben Bixby's infringing activities. Garrett Decl. ¶ 2. These witnesses are not located in the Eastern District of California.

Further, Plaintiff's additional witnesses, including Andre Benjamin, Eufaula Garrett and Mary Grieco do not reside in California. These witnesses provided declarations in support of the instant motion which included substantive information relevant to underlying allegations, such as communications and negotiations with Defendants regarding the subject website. Although these witnesses regularly travel to California, there is no indication that travel to Michigan would be of any greater inconvenience. Although Defendants have not identified any witnesses, they have indicated that all activities related to programming, registration and revision of the benjaminbixby.com website have taken place in Michigan. As such, this factor does not favor venue in the Eastern District of California.

### 2. Convenience of the Parties

Plaintiffs contend that both High Schoolers' and Andre 3000, Inc's principal place of business is in California. Benjamin Decl. ¶¶ 3, 5 and Exhibits A, C. Plaintiff Benjamin also spends a significant amount of time in California. Benjamin Decl. ¶¶ 6-7. Plaintiffs allege that they "have absolutely no contacts" in Michigan. Opposition, p. 11. Plaintiffs also assert that Greg Bixby has unlimited access to the Pioneer Property, travels there regularly and is active in that community.

Plaintiffs conclude that Gregory Bixby would suffer little, if any, hardship if forced to resolve this action in the Eastern District.

Plaintiff Benjamin does not reside in the Eastern District of California or in California. He would be required to travel to California for this matter, but there is no indication that travel to Michigan would be a greater inconvenience. Plaintiffs High Schoolers and Andre 3000, Inc. do not have their principal places of business in the Eastern District of California. Defendant Gregory Bixby does not reside in California. Defendant Benjamin Bixby does not reside in California. Although Defendant Gregory Bixby travels to California, there is no indication that Defendant Benjamin Bixby also travels to California for business or pleasure.

This factor weighs in favor of transfer to Michigan.

3. Location of the Evidence

Plaintiffs argue that they intend to call at least five witnesses who reside in California. Records supporting their testimony are located in California. Garrett Decl. ¶ 2. However, Plaintiffs indicate that other documentation is not located in California, but is found in Georgia, New York and Hong Kong. Id. To the extent that Defendants may argue that their records are located in an alternative district, Plaintiffs contend that this is not sufficient to support a transfer motion. Johnson, 2008 WL 3154731, at *4 (absent any other grounds for transfer, fact that records are located in a particular district is not itself sufficient to support a motion for transfer).

At the hearing, Defendants argued that relevant evidence is located in Michigan. As noted, all activities relative to the benjaminbixby.com website, such as registrations, renewals and revisions, reportedly have been conducted in Michigan. This factor favors transfer to Michigan.

Based on the above, Defendants' motion to transfer is GRANTED. The Court ORDERS that this action be transferred to the United States District Court for the Western District of Michigan, Southern Division.

IT IS SO ORDERED.

Dated: **July 20, 2009**          **/s/ Dennis L. Beck**
                                   UNITED STATES MAGISTRATE JUDGE